UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| Mark Joseph Swierzewski, | Case No.: 8:16-bk-4790-MGW |
| Debtor. | |
| Bond Medical Group, Inc. and<br>Bond Development, Inc. | |
| Plaintiff, | Adv. Proc. No. 8:16-ap-00781-MGW |
| v. | |
| Mark Joseph Swierzewski, | |
| Defendant.<br>_______________________________________/ | |

**BOND MEDICAL GROUP, INC. AND BOND DEVELOPMENT, INC.'S**
**AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS**
**(amended to correct case style and include exhibits)**

Plaintiffs Bond Medical Group, Inc. and Bond Development, Inc. (collectively, the "**Plaintiffs**"), unsecured creditors in this case, by and through undersigned counsel, file this Complaint to Determine Dischargeability of Debts (the "**Complaint**") against Mark J. Swierzewski (the "**Defendant or Debtor**") and, in support thereof, respectfully states as follows.

## JURISDICTION AND VENUE

1. This is an adversary proceeding brought pursuant to Rules 7001 et al. of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 523 objecting to the dischargeability of debts owed to the Plaintiffs.

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), arising in the above-referenced case, which is currently pending in this Court under title 11 of the United States Code.

4. Debtor, Mark J. Swierzewski ("**Swierzewski**"), is an individual residing at 901 Harbour Bay Drive, Tampa, Florida 33602.

5. On June 2, 2016 (the "**Petition Date**"), Swierzewski commenced the filing of a Voluntary Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Middle District of Florida, bankruptcy case number 8:16-bk-04790-MGW (the "**Bankruptcy Case**").

6. Bond Medical Group, Inc. ("**BMG**") is a Florida corporation with its principle place of business in Hillsborough County, Florida.

7. Bond Development, Inc. ("**BDI**") is a Florida corporation with its principle place of business in Hillsborough County, Florida.

8. Debtor Swierzewski is a medical doctor who, for all times material, has been a resident of Hillsborough County, Florida.

9. Non-Party Tod Fusia ("**Fusia**") is a medical doctor who, for all times material, has been a resident of Hillsborough County, Florida.

10. Tod Fusia & Mark Swierzewski, MDs, P.A. ("**TBU**") is a Florida Corporation doing business as Tampa Bay Urology and/or Florida Urology Partners with its principal place of business located at 2822 W. Virginia Avenue, Tampa, Florida 33607.

11. From its inception, Swierzewski and Fusia, have been the only owners of TBU.

12. This is an action against Swierzewski to determine the non-dischargeability of debts owed to BMG and BDI.

13. The Court has jurisdiction to enter a final order in this adversary proceeding.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**GENERAL ALLEGATIONS**

15. Sometime in 1997 or 1998, Swierzewski was engaged as an Adjunct Professor of Anatomy and Urology at the University of South Florida.

16. There, he met Travis Bond ("**Bond**"), a young, first-year medical student seeking mentorship and guidance.

17. At Swierzewski's request, Bond assisted Swierzewski on a research project that year.

18. Swierzewski and Bond worked closely on the research project, developing a relationship of confidence, loyalty and trust.

19. About two years later, Swierzewski, along with Fusia, approached Bond to ask whether he would be interested in managing a new urology medical practice the doctors intended to form, TBU.

20. Bond, still unsure of his role in the field of medicine, accepted his mentor's offer, and agreed to handle the business aspects of TBU.

21. On or around January 2000, Swierzewski and Fusia formed TBU, the business entity through which they operated their urology practice.

22. In 2001, Bond formed BMG, for the purpose of providing medical practice management services to TBU.

23. Though at that time TBU was already in arrears on the payment of BMG's management fees, Swierzewski and his partner desired to move TBU into a larger office space.

24. The properties located at 2822 West Virginia Avenue and 4215 N. Gomez Ave. Tampa, Florida were identified as ideal for TBU's relocation, providing the space and opportunity for the urology practice to expand (the "Leased Premises").

25. The problem was TBU and Swierzewski did not have the credit necessary to obtain financing for the purchase of the Leased Premises from a conventional lender.

26. Swierzewski knew, however, that Bond and his wife did.

27. Swierzewski urged Bond to purchase the Leased Premises himself.

28. But Bond, an inexperienced real estate investor, needed convincing.

29. Swierzewski explained that by purchasing the Leased Premises and leasing it back to TBU, Bond would be effectively providing TBU a "bridge loan".

30. In addition, Swierzewski argued that by purchasing the Leased Premises, TBU's repayment of the monies owed to BMG would be more expeditious since it could generate more income with the larger space.

31. In reliance upon Swierzewski's representations, on or around December 19, 2001, Bond created BDI for the purpose of purchasing the Leased Premises and leasing it back to TBU, just as Swierzewski requested.

32. Because the purchase of the Leased Premises placed Bond and his family at such high financial risk, Bond insisted that the parties paper the transactions.

33. On February 13, 2002, Bond, on behalf of BMG, and Swierzewski and Fusia, on behalf of TBU, signed a Management Services Agreement (the "**MSA**"). A true and correct copy of the MSA is attached hereto as **Exhibit A**.

34. Swierzewski and Fusia each personally guaranteed the obligations of TBU under the MSA (the "**MSA Guaranty**"). A true and correct copy of the MSA Guaranty is attached hereto as **Exhibit B**.

35. On the same day, TBU entered into an Office Lease Agreement with BDI (the "**Office Lease**"), which was later amended (the "**First Amendment**"). The Office Lease Agreement and First Amendment are collectively referred to as the "**Lease**."

36. Swierzewski and Fusia each personally guaranteed the obligations of TBU under the Lease, signing both the Office Lease Agreement and the First Amendment as personal guarantors. A true and correct copy of the entire lease agreement, with the personal guarantees is attached hereto as **Exhibit C**.

37. Pursuant to the Office Lease Agreement, TBU leased the Leased Premises from BDI for a period of 15 years.

**<u>Swierzewski Buys Time</u>**

38. Over the next two years, TBU, at Swierzewski's direction made multiple discretionary expenditures, including the buyout of another physician's practice and the increases of Swierzewski and Fusia's salary.

39. Yet, by March 2004, TBU had fallen behind on the required payments to BMG under the MSA by approximately $148,548.28.

40. At that time, TBU had also fallen behind on its required lease payments to BDI by approximately $41,837.00.

41. Bond frequently approached Swierzewski inquiring about his plan to repay BMG and BDI.

42. Each time, Bond was assured by Swierzewski that the money was coming.

43. In an effort to placate Bond, and convince BMG and BDI not to terminate their respective agreements, Swierzewski executed four additional agreements purporting to secure TBU's repayment of its debts.

44. First, Swierzewski, as president and owner of Innovative Surgical Resources, Inc. (ISR), agreed to a Security Agreement whereby ISR pledged to BMG all of its present and future accounts and tangible and intangible property to secure payment of the arrearages (the "**ISR Security Agreement**").

45. Around the same time, Swierzewski signed a personal guarantee whereby he and Fusia unconditionally and irrevocably guaranteed payment when due of all sums due and owing by TBU under the MSA (the "**2004 Personal Guarantee**"). A true and correct copy of the 2004 Personal Guarantee is attached hereto as **Exhibit D**.

46. Third, TBU, under the signature of Mark Swierzewski as its president, signed a security agreement (the "**2004 BMG Security Agreement**") pledging to BMG a security interest in the present and future accounts of TBU, its present and future receivables, TBU's tangible and intangible personal property, and the proceeds from TBU's accounts and property. A true and correct copy of the 2004 BMG Security Agreement is attached hereto as **Exhibit E**.

47. Finally, Swierzewski, as president of TBU signed a security agreement (the "**2004 BDI Security Agreement**") pledging to BDI a security interest in the present and future accounts of TBU, along with TBU's tangible and intangible personal property and the proceeds from the accounts and property. A true and correct copy of the 2004 BDI Security Agreement is attached hereto as **Exhibit F**.

**A Plan is Devised**

48. Over the years, the debts owed to BMG and BDI continued to accrue.

49. TBU, Swierzewski and Fusia failed to make payments due under the Office Lease and MSA according to the agreed schedules.

50. By 2007, TBU, Fusia and Swierzewski were aware that they were indebted to BMG and BDI for approximately $1,000,000.00.

51. Swierzewski continued to assure Bond, as representative for BMG and BDI that the entities were closer to repayment.

52. Upon information and belief, sometime in 2007, Swierzewski attended a seminar in Texas to investigate physician practice group formations and the benefits of using a physician "super group".

53. A physician "super group" is a collection of physician practice groups that join under a single tax identification number.

54. Physicians benefit from joining a "super group" by sharing risk with a greater number of doctors, increasing buying power and market share, and obtaining certain insulation from creditors.

55. In January 2008, Swierzewski told Bond, as representative for BMG and BDI, that TBU was actively seeking to join a physician "super group".

56. At this time, BMG and BDI had been guaranteed repayment through TBU's receivables, among other things.

57. Swierzewski told Bond that by joining the "super group", TBU would be collecting "125% of Medicare" and would finally be able to generate the income it needed to repay BMG and BDI through its participation in such a group, due to the financial benefits it would receive by joining same.

58. In reliance upon Swierzewski's representations, BMG and BDI, again, did not terminate its agreements with TBU, or otherwise seek recourse against TBU, Swierzewski or Fusia for the debts owed.

**Swierzewski Makes his Exit**

59. Though Swierzewski at all times maintained that **TBU** intended on joining a "super group."

60. Thus, any financial benefit to TBU would benefit BMG and BDI by virtue of the agreements securing their payment entered into over the years.

61. But that is not what Swierzewski planned, or what transpired.

62. On or about September 16, 2008, Florida Urology Partners, LLP ("**FUP**") filed with the Florida Department of State a Limited Liability Partnership Annual Report changing FUP's principal place of business to 4215 N. Gomez Avenue, which is part of the Leased Premises.

63. On or around the same time, Swierzewski and Fusia formed FUP III, P.L., a Florida limited partnership ("**FUP III**"), for the purpose of owning a partnership interest in FUP and effectively taking the place of TBU.

64. In fact, TBU, Swierzewski and Fusia never informed Bond, BMG or BDI of the existence of FUP III.

65. Swierzewski made numerous representations to Bond, BMG and BDI, that the entities would be repaid for their debts by the income generated by TBU, among other things.

66. Yet, Swierzewski, along with Fusia, began seeing TBU's patients and providing medical services through FUP III without Bond, BMG or BDI's knowledge or authorization vis-à-vis FUP and FUP III.

67. Indeed, Swierzewski, along with Fusia, transferred all TBU's assets to FUP and FUP III for no consideration in order to defraud BDI and BMG and to avoid paying the debts owed to them.

68. Around this time, Swierzewski began using the TBU American Express Credit Card for his personal expenses.

69. On or about January 31, 2009, at Mark Swierzewski's direction, BMG sent letters to all vendors with which it administered open accounts on behalf of TBU, on Tampa Bay Urology letterhead, asking that all billing for TBU be re-directed to "Florida Urology Partners, LLC" [sic] to the attention of Mary Riley at the West Virginia Avenue address.

70. Upon information and belief, to add insult to injury, at Swierzewski's direction the money remaining in TBU's accounts was used to fund the very litigation it commenced against BMG and BDI.

**The Debts Remain Unpaid**

71. BMG and BDI sued TBU, Fusia, and Swierzewski for breach of the Office Lease Agreement in the Thirteeth Judicial Circuit in and for Hillsborough County, Florida, Case No.: 10-002681, consolidated with Case No.: 09-09377. The case was tried in November, 2014 and resulted in a judgment in favor of BDI and against TBU, Fusia, and Swierzewski in the sum of four hundred twenty-three thousand, five hundred and eighty-three dollars and thirty-one cents ($423,583.31), for damages through the date of trial, plus attorneys' fees and post judgment interest. (Hereinafter this is referred to as the "First Suit.") The Second District Court of Appeals affirmed that judgment on appeal by the Defendants.

72. In the First Suit, a judgment was entered in favor of BMG and against TBU, Fusia and Swierzewski for breach of the MSA in the sum of eight-hundred and thirty-eight thousand,

six-hundred and sixty-six dollars and twenty cents ($838,666.20)[1], for damages through the date of trial, plus attorneys' fees and post-judgment interest.

73. Based upon information and belief, Swierzewski acted with actual fraud by inducing BMG and BDI to incur, and continue to incur, its respective debts.

74. Upon information and belief, Swierzewski treated TBU as his alter ego so that this Court should disregard its corporate form.

75. Based upon the foregoing, the Debtor's acts should render the debts owed to BDI and BMG to be non-dischargeable.

**COUNT I**
**Determination of Dischargeability –BDI**
**(Debt Incurred by False Pretenses, False Representations, or Actual Fraud**
**11 U.S.C. §523(a)(2)(A))**

76. BDI incorporates by reference and re-alleges the allegations in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. This is an action to determine dischargeability of debt, pursuant to Section 523(a)(2)(A) and F.R.B.P. Rules 7001 and 4007.

78. In inducing BDI into the Lease and security agreements and convincing it to refrain from exercising its rights thereunder, Swierzewski represented to BDI the following statements that were false and misleading:

a. That the borrower, TBU, intended on paying BDI pursuant to the terms of the Lease;

b. That the debt was incurred for the purpose of TBU leasing the Leased Premises;

---

[1] The numeric damages award contained in the judgment is $838,661.20. This order reflects the phonetic damage award contained in the judgment.

c. That TBU would occupy the Leased Premises for the duration of the Lease;

d. That TBU would join the "super group" which would in turn benefit BDI by facilitating the repayment of the debt owed to BDI;

e. That at all times TBU and its employees were occupying the Leased Premises;

f. That TBU would continue to generate money for the purpose of paying the debt owed to BDI;

79. At the time Swierzewski made these representations to BDI, Swierzewski knew or should have known that such representations were false and misleading.

80. At the time Swierzewski made these representations to BDI, Swierzewski intended for BDI to rely upon the representations in permitting Swierzewski and TBU to occupy the Leased Premises after default and entering into and making the representations contained in the 2004 BDI Security Agreement.

81. Based upon information and belief, Swierzewski acted with false pretenses or in an actual fraudulent manner by forming FUP III and transferring to it all TBU's assets for the purpose of evading debts owed to BDI.

82. BDI's entry into the Lease and 2004 Security Agreement, and its decision not to terminate the agreements after default was the result of actual fraud by Swierzewski.

83. BDI, to its determent, justifiably relied upon Swierzewski's fraudulent misrepresentations, suffered damages and expenses (including attorneys' fees) incurred in connection with this Bankruptcy Case and adversary proceeding.

WHEREFORE, BDI respectfully requests that this Court enter a judgment in favor of BDI 1) determining that the debts owed by Swierzewski based on the above-described acts, conduct and circumstances, including attorneys' fees and costs available under the available law and applicable agreements, are non-dischargeable pursuant to 523(a)(2)(A) and (ii) and granting BDI such further relief as the Court deems just and proper.

**Determination of Dischargeability –BMG**
**(Debt Incurred by False Pretenses, False Representations, or Actual Fraud**
**11 U.S.C. §523(a)(2)(A))**

84. BMG incorporates by reference and re-alleges the allegations in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

85. This is an action to determine dischargeability of debt, pursuant to Section 523(a)(2)(A) and F.R.B.P. Rules 7001 and 4007.

86. In inducing BMG into the MSA and subsequent agreements and convincing it to refrain from exercising its rights thereunder, Swierzewski represented to BMG the following statements that were false and misleading:

a. That the borrower, TBU, intended on paying BMG pursuant to the terms of the MSA and subsequent agreements;

b. That TBU would join a "super group" which, in turn, would benefit BMG by facilitating the repayment of debt owed to BMG;

c. That TBU would continue to generate money for the purpose of paying the debt owed to BMG under the MSA and subsequent agreements;

87. At the time Swierzewski made these representations to BDI, Swierzewski knew or should have known that such representations were false and misleading.

88. At the time Swierzewski made these representations to BDI, Swierzewski intended for BDI to rely upon the representations in permitting Swierzewski and TBU to occupy the Leased Premises after default and entering into and making the representations contained in the 2004 BDI Security Agreement.

89. Based upon information and belief, Swierzewski acted with false pretenses or in an actual fraudulent manner by forming FUP III and transferring to it all TBU's assets for the purpose of evading debts owed to BDI.

90. BMG's entry into the MSA, and 2004 agreements, and its decision not to terminate the agreements after default was the result of actual fraud by Swierzewski.

91. BDI, to its determent, justifiably relied upon Swierzewski's fraudulent misrepresentations, suffered damages and expenses (including attorneys' fees) incurred in connection with this Bankruptcy Case and adversary proceeding.

WHEREFORE, BMG respectfully requests that this Court enter a judgment in favor of BMG: 1) determining that the debts owed by Swierzewski based on the above-described acts, conduct and circumstances, including attorneys' fees and costs available under the available law and applicable agreements, are non-dischargeable pursuant to 523(a)(2)(A) and (ii) and granting BDI such further relief as the Court deems just and proper.

DATED this 22nd day of November, 2016.

/s/ *Richard J. McIntyre*
RICHARD J. MCINTYRE
Florida Bar No. 962708
rich@mcintyrefirm.com
MCINTYRE THANASIDES BRINGGOLD
ELLIOTT GRIMALDI & GUITO, P.A.
500 E. Kennedy Blvd., Ste. 200

Tampa, Florida 33602
813.223.0000
813.899.6069 (F)
*Attorneys for the Creditor Bond Development, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing *Amended Complaint to Determine Dischargeability of Debt* has been furnished on this 22nd day of November, 2016, via the Court's CM/ECF system to all registered users and/or U.S. Mail or electronic mail to:

Office of the US Trustee, Nicole Peair, 501 E. Polk Street, Suite 1200, Tampa, FL 33602

Chapter 7 Trustee, Angela Welch, 12157 West Linebaugh Avenue, PMB 401, Tampa, FL 33626

Attorney for Chapter 7 Trustee, David S. Jennis and Kathleen L DiSanto, Jennis Law Firm, 400 North Ashley Drive, Suite 2450, Tampa, FL 33602

Debtor, Mark Joseph Swierzewski, 901 Harbour Bay Dr., Tampa, FL 33602

Attorney for Debtor, Daniel R Fogarty, Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, FL 33602

Creditor, Bond Medical Group, Inc. and Bond Development, Inc., c/o Travis Bond, 18609 Avenue Monaco, Lutz, FL 33558; Email: tbond@bondmedical.com

Attorney for Creditors, McIntyre Thanasides Bringgold Elliott Grimaldi & Guito, P.A., 500 E. Kennedy Blvd., Ste. 200, Tampa, FL 33602

Creditor, Bond Development, Inc. and Bond Development, Inc., c/o Travis Bond, 18609 Avenue Monaco, Lutz, FL 33558; Email: tbond@bondmedical.com

Attorney for Creditors, McIntyre Thanasides Bringgold Elliott Grimaldi & Guito, P.A., 500 E. Kennedy Blvd., Ste. 200, Tampa, FL 33602

/s/*Richard J. McIntyre*
Attorney
FBN: 962708